**MLG AUTOMOTIVE LAW, APLC**
A Professional Law Corporation
Jonathan A. Michaels, Esq. – State Bar No. 180455
Kathryn J. Harvey, Esq. – State Bar No. 241029
Kristen R. Rodriguez, Esq. – State Bar No. 289668
2801 W. Coast Highway, Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
(jmichaels@mlgautomotivelaw.com)
(kharvey@ mlgautomotivelaw.com)
(krodriguez@ mlgautomotivelaw.com)

Attorneys for Plaintiff,
Edo Tsoar

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDO TSOAR, individually, and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>BMW OF NORTH AMERICA, LLC, a New Jersey Corporation; and DOES 1 to 100, inclusive,<br><br>   Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

**JURY TRIAL DEMANDED**

Plaintiff Edo Tsoar, by his attorneys, files this Class Action Complaint, for himself and all others similarly situated against BMW of North America, LLC ("BMW" or "Defendant").  Plaintiff alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## I.

## INTRODUCTION

1.     BMW markets and sells numerous models of vehicles in the United States including the 2014 – 2016 BMW i3 REx (the "Class Vehicles").

2.     This case involves Defendant BMW's marketing and distribution of the Class Vehicles, which BMW advertises as including a "fuel extender" or "option" two-cylinder gasoline, combustion engine with a small fuel tank that engages when the battery level drops to a specified point.  BMW advertises that the fuel extender acts purely as a generator to produce electricity and extend the range of the vehicle from approximately 81 miles per charge to 150 miles per charge.  BMW fails to advise consumers, however, that when the vehicle is operating on the fuel extender, the vehicle is unable to maintain the speed and performance of normal operation; the performance relied upon when purchasing a "Class Vehicle."

3.     This action is brought by Plaintiff on behalf of a class and subclass comprised of all similarly situated consumers in the United States and California, respectively, who purchased or leased one or more of the Class Vehicles other than for resale or distribution (the "Classes" or "Class Members").  Plaintiff and Class Members assert claims against BMW for: i) Violation of the Magnuson-

Moss Warranty Act, ii) Violation of the Song-Beverly Consumer Warranty Act, iii) Breach of Express Warranty, iv) Breach of Implied Warranty of Fitness for a Particular Purpose, v) Breach of Implied Warranty of Merchantability (on behalf of Nationwide Class), vi) Breach of Implied Warranty of Merchantability (on behalf of California Subclass), vii) Unlawful, Unfair, and Fraudulent Business Acts & Practices (Cal. Bus. & Prof. Code § 17200 et seq.), and viii) Violation of the Consumer Legal Remedies Act (Cal. Bus. & Prof. Code § 17500 et seq.). Plaintiff and Class Members seek restitution, damages, and equitable relief, including disgorgement of profits, and appropriate attorneys' fees and costs.

## II.
## THE PARTIES

4.     On or about January 27, 2016, Plaintiff Edo Tsoar, an individual consumer over the age of 18, leased a 2015 BMW i3 REx (VIN No. WBY1Z4C53FV503332), from a dealership located in Calabasas, California. Plaintiff leased the 2015 BMW i3 REx for personal use while traveling to and from work and to transport his son to and from sporting events, including practices and weekend tournaments.  The REx model was attractive to Plaintiff because of the Range Extender included in the vehicle; the Range Extender doubled the vehicle's electronic driving range 81 miles to 150 miles per charge. Unbeknownst to Plaintiff however, when the battery charge depletes to a certain level, triggering the engagement of the Range Extender, the vehicle does not produce enough power to maintain normal operation.  Indeed, if the vehicle is under any kind of significant load (such as going uphill, or loaded with passengers), the speed of the vehicle will dramatically decrease as the battery charge diminishes. BMW knew about, but did not disclose, this sudden, significant, and dangerous loss of power that was inevitable when the Range

Extender is engaged. Plaintiff leased the BMW i3 REx under the reasonable but mistaken belief that the vehicle would perform in a reasonable manner at all times, however it did not.

5.      In late April 2016, Plaintiff learned of the defect in the vehicle that caused the vehicle to significantly and dangerously lose power when operating solely on the Range Extender. Had he known about the defect, he would not have purchased this vehicle, would not have paid a premium price, and would not have retained the vehicle.

6.      Plaintiff has standing to assert all of the claims set forth herein, as he suffered an injury in fact and a loss of money or property as a result of Defendant's conduct.

7.      Defendant is a Delaware limited liability company with its principal place of business in Woodcliff Lake, NJ.

8.      Defendant and its subsidiaries, affiliates, and other related entities, and its respective employees were the agents, servants and employees of Defendant, and each was acting within the purpose and scope of that agency and employment.

9.      Whenever reference is made to any act by Defendant or its subsidiaries, affiliates, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction for Defendant while engaged in the scope of their duties.

## III.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.   Plaintiff alleges that the total claims of individual Class Members are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2).

11.    This Court has personal jurisdiction over Defendant because Defendant engaged in significant business throughout the State of California thus providing the State of California with general jurisdiction.

12.    Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendant, as a corporation, is deemed to reside in any district in which it is subject to personal jurisdiction.   Moreover, because Defendant has failed to identify a California principal place of business in their Statement of Information filed with the California Secretary of State as required by California Corporations Code § 2105, venue is proper in this County and judicial district.

# IV.
# **FACTUAL ALLEGATIONS**

13.     In 2013, BMW announced the roll-out of the BMW i3, a five-door urban electric vehicle, and BMW's first zero emissions mass-produced vehicle. The BMW i3 features carbon-fiber-reinforced polymer to improve the vehicle's energy consumption, and touting its commitment to energy efficiency, sustainability, and performance, BMW markets the BMW i3 series as "an electric vehicle that performs like a BMW… because it is one."

14.     Defendant offers two versions of the BMW i3, the purely electric i3, capable of driving 81 miles per charge, and the BMW i3 REx equipped with a Range Extender (the "Class Vehicle" or "Class Vehicles").   BMW advertises that the Class Vehicle is capable of driving 150 miles in total range, doubling the electric driving range by integrating a gas-powered, two-cylinder engine that generates electricity to maintain the vehicle's performance.   The BMW i3 REx is marketed to drivers who want to "go even farther."

15.     The BMW i3 REx, however, is plagued with a serious defect: the added mileage range is coupled with a sudden, severe, and dangerous loss in power.   Specifically, the Range Extender does not produce enough power for the vehicle to maintain the performance allowed by the battery.   For example, if the vehicle is traveling up hill and the battery reaches approximately 5%, thereby activating the Range Extender, the speed of the vehicle will suddenly and rapidly decrease, without warning.   Likewise, if the vehicle has an increased load of passengers and the battery reaches approximately 5%, thereby activating the Range Extender, the speed of the vehicle will suddenly and rapidly decrease, without warning.

16.     Plaintiff has experienced such a loss in power.  One afternoon, while traveling in the Class Vehicle in Agora Hills, California, Plaintiff's battery was getting low, around 6%.  Plaintiff continued to drive the vehicle home (a destination that was less than 5 miles away), and while going up a hill with the flow of traffic, the vehicle suddenly and unexpectedly lost power, dramatically decreasing the speed of the vehicle.  Plaintiff was unable to keep up with the flow of traffic and had to change lanes to the far right, slowest lane to safely proceed.  Thereafter, Plaintiff experienced a similar loss in power on multiple occasions.  The loss in power always occurred when the Class Vehicle's battery was at or below approximately 5%, the Range Extender was activated, and the driving condition/terrain required more power.  Alarmed and frightened by the defect, Plaintiff went to the dealership to discuss the issue, however the sales manager would not allow him to return the car, instead suggesting Plaintiff change his driving habits.  Plaintiff now avoids driving farther than 80 miles.

17.     Plaintiff's experience is by no means isolated; other consumers have had similar experiences.   In fact, there are blogs and other websites where consumers have complained of the exact same defect.

18.     For example a website titled "autoblog.com" published an article entitled, "BMW looking to fix i3 acceleration problem uncovered by Consumer Reports."   The articles states, "Consumer Reports brought the problem to light when one of its drivers was behind the wheel of an i3 using the range-extender.  When the driver attempted to pass another vehicle on a rolling, two-lane road, the BMW suddenly had no power to accelerate."     Additionally, "autoconnectedcar.com" published a review entitled, "Why I'm Returning my BMW i3 After Three Months," addressing the same problem: the inability of the i3 REx model to maintain performance while the Range Extender is engaged.

**CLASS ACTION COMPLAINT**

There, it was reported by a consumer, "…the last straw came when I was driving back from the Inland Empire, I was in the fast lane on the freeway.  I ran out of battery power and the gasoline extension started.  I couldn't keep up with traffic and I had to pull over."

19.     Likewise, the data base maintained by the National Highway Traffic Administration contains numerous similar complaints by consumers, some of which are set forth below.

**Date Complaint Filed:** 1/15/2016
**Date of Incident:** 12/16/2015
**NHTSA ID Number:** 10820554
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification Number:** WBY1Z4C59FV…
**SUMMARY:**
TL* THE CONTACT OWNS A 2015 BMW I3. WHILE DRIVING APPROXIMATELY 70 MPH, ON AN EXTENDED RANGE, THE SPEED DECREASED TO BELOW 60 MPH AND COMPLETELY LOST ACCELERATION. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE FAILURE WAS NOT DIAGNOSED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VIN WAS INVALID. THE FAILURE MILEAGE WAS 9,500

**Date Complaint Filed:** 1/4/2016
**Date of Incident:** 12/29/2016
**NHTSA ID Number:** 10817494
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification Number:** Not available.
**SUMMARY:**
2015 BMW I3 WITH RANGE EXTENDER (REX) JUST HIT 1000 MILES. HAD FOR 6 WEEKS. I WAS TRAVELING DOWN A FREEWAY AT 75 MPH USING MY ELECTRIC CAR. AS THE BATTERY WAS ALMOST OUT OF JUICE, I KNEW THE FUEL RANGE EXTENDER WOULD KICK IN. HOWEVER, WHEN THE EXTENDER KICKED IN, MY MPH IMMEDIATELY STARTED

TO DROP. WITHIN THE 15 SECONDS, I WAS DOWN TO 35 MPH FROM THE 75 I WAS TRAVELING. I HAD THE ACCELERATOR FLOORED, BUT COULD NOT GET ANY POWER TO KEEP UP WITH THE FLOW OF TRAFFIC. WITH MY HAZARD LIGHTS TURNED ON. MY CAR AND I SAFELY NAVIGATED TO THE SIDE OF THE ROAD. THANK GOODNESS THERE WAS NOT A CAR FOLLOWING TO CLOSE OR A SEMI TRUCK. I WOULD BE DEAD OR IN A SERIOUS ACIDENT IF THERE WAS. MY CONCERN, CONSUMERS ARE NOT BEING WARNED OF THIS ISSUE... HERE ARE A FEW MORE FACTS THAT ARE RELAVATN 1. WHEN I DROVE THE CAR THE FIRST TIMER HE RANGE EXTENDER KICKED IN. I WAS NOT DROPPED DOWN TO 30-35 MPH, I WAS ABLE TO KEEP UP WITH FREEWAY TRAFFIC JUST FINE 2. ON DECEMBER 29, 2015 II WAS TRAVELING ON A FREEWAY AT 75 MPH. THERE WAS A SLIGHT INCLINE. MY ELECTRIC HAD BEEN USED AND THE REX KICKED IN. THE CAR IMMEDIATELY STARTED TO DROP IN SPEED. I HAD THE ACCELERATOR PUSHED TO THE FLOOR IN HOPES OF GETTING THE CAR BACK UP TO A SAFE SPEED. HOWEVER, THAT DID NOT HAPPEN. I HAD TO NAVIGATE MY DYING CAR TO THE SIDE OF THE ROAD IN 75 MPH TRAFFIC. 3. IMMEDIATELY TOOK THE I3 TO THE BMW SERVICE PROVIDER. INSTRUCTED BY THE SERVICE DEPT THIS IS WORKING AS DESIGNED. ERROR MESSAGE OF 0056 DID NOT HAVE ANY DESCRIPTION ON IT. NOT SURE HOW THE TECHNICIAN KNEW THERE WAS NOT AN ISSUE 4. INSTRUCTED BY SERVICE DEPT TO GO BACK TO MY SALES PERSON TO BE RE-TRAINED ON MY CAR. WHY ISN'T THERE AN INDICATOR LIGHT WARNING THE DRIVER YOU WILL BE LOOSING SIGNIFICANT POWER AND SPEED. PULL OVER TO A SAFE MPH? CONCERNED FOR OTHER CONSUMERS....SOMEONE WILL NOT BE AS LUCKY AS I WAS.

**Date Complaint Filed:** 4/25/2016
**Date of Incident:** 4/13/2016
**NHTSA ID Number:** 10861225
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification Number:** WBY1Z4C57EV

**SUMMARY:**
TEST DRIVING THIS BMW I3, I NOTICED THE REX RANGE EXTENDER ENGINE WAS DANGEROUSLY SLOW. THE 34 HP SCOOTER ENGINE IS A HAZARD IN TRAFFIC. I ALSO NOTICED THE BRAKE LIGHTS WOULD NOT COME ON WHEN SLOWING TO A STOP. CONSUMER REPORTS OUTLINED IT, AND I CAN'T SAY IT BETTER. .... WHY ARE THERE NOT MINIMUM FMVSS PERFORMANCE STANDARDS TO COVER THE HAZARDS WHILE IN REX-MODE (BATTERY DEAD, RUNNING ON SCOOTER MOTOR IN HEAVY, FAST, TRAFFIC)? THIS IS A NEW AREA: WEIRD BEHAVIOR FROM EVS IN REX MODE. HTTP://WWW.CONSUMERREPORTS.ORG/CRO/NEWS/2014/10/BEWARE-TAILGATING-A-BMW-I3/INDEX.HTM HTTP://WWW.CONSUMERREPORTS.ORG/CRO/NEWS/2014/10/BMW-I3-HAS-THE-LITTLE-ENGINE-THAT-COULD/INDEX.HTM

**Date Complaint Filed:** 8/16/2014
**Date of Incident:** 8/13/2014
**NHTSA ID Number:** 10625717
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification Number:** WBY1Z4C54EV…
**SUMMARY:**
I WAS DRIVING MY BMW I3 REX FROM THE SAN FRANCISCO BAY AREA TO THE BEACH NEAR SANTA CRUZ VIA HIGHWAY 17 WITH MY WIFE AND TWO CHILDREN. GETTING TO THE BEACH FROM MOST OF THE SF BAY AREA REQUIRES DRIVING OVER SOME COASTAL HILLS. AS I APPROACHED THE HILLS, MY EV BATTERY WAS VERY LOW. THE I3 WITH "REX" (SIMILAR TO THE CHEVY VOLT) HAS A GASOLINE ENGINE THAT ACTIVATES WHEN THE MAIN EV BATTERY IS DEPLETED. IN THESE HILLS, THE REX ENGINE TURNED ON. FOR SEVERAL MINUTES, THE CAR DROVE NORMALLY AND KEPT PACE WITH MODERATE TRAFFIC IN THE SLOW LANE. THE SPEED LIMIT ON HIGHWAY 17 VARIES FROM 50MPH TO 65MPH. ON THE HILLY PARTS, IT IS A TWO LANE HIGHWAY WITH NO SHOULDER ON EITHER SIDE, INFREQUENT EXITS AND OCCASIONAL TURN-OUTS. WITHOUT ANY WARNING FROM

THE CAR, I EXPERIENCED A SUDDEN AND DRAMATIC REDUCTION IN POWER, WITH THE CAR SLOWING FROM APPROXIMATELY 50MPH TO 25MPH EVEN UNDER FULL THROTTLE. I TURNED ON MY HAZARD BLINKERS AS APPROACHING CARS HONKED AND SWERVED TO AVOID US. WITH NO SHOULDERS, WE HAD TO "LIMP" TO THE NEXT TURNOUT. THIS WAS EXTREMELY ALARMING AND POTENTIALLY DANGEROUS. WE REALIZED THAT ENGINE WAS RUNNING LOUDLY AND WE SURMISED THAT IT WAS RECHARGING THE BATTERY. AFTER A COUPLE OF MINUTES, I CONFIRMED THAT POWER WAS RESTORED BY BRIEFLY ACCELERATING IN THE LONG TURN-OUT. I THEN ATTEMPTED TO MERGE BACK ONTO THE HIGHWAY. ALTHOUGH FULL POWER SEEMED AVAILABLE INITIALLY, AS I PULLED OUT OF THE TURN-OUT INTO THE SLOW LANE, THE POWER DROPPED AGAIN, SLOWING US FROM 40MPH BACK TO 25MPH. WE AGAIN LIMPED TO THE NEXT TURN-OUT AS CARS AVOIDED US. MOST SHOCKING OF ALL, I SPOKE WITH BMW'S INTERNAL "I CONCIERGE" PRODUCT TEAM WHO INFORMED ME THAT THIS WAS NORMAL OPERATION FOR THIS VEHICLE. I LEARNED THAT THE I3 HAS A SPECIAL MODE TO SAFELY DEAL WITH HILLS, BUT THIS WAS REMOVED FROM THE US CAR IN ORDER TO MAXIMIZE CALIFORNIA "CREDITS." MONEY TRUMPS SAFETY.

**Date Complaint Filed:** 1/16/2015
**Date of Incident:** 11/29/2014
**NHTSA ID Number:** 10676147
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification Number:** WBY1Z4C54EV…
**SUMMARY:**
I WAS DRIVING MY BMW I3 REX FROM THE SAN FRANCISCO BAY AREA TO THE BEACH NEAR SANTA CRUZ VIA HIGHWAY 17 WITH MY WIFE AND TWO CHILDREN. GETTING TO THE BEACH FROM MOST OF THE SF BAY AREA REQUIRES DRIVING OVER SOME COASTAL HILLS. AS I APPROACHED THE HILLS, MY EV BATTERY WAS VERY LOW. THE I3 WITH "REX" (SIMILAR TO THE CHEVY VOLT) HAS A GASOLINE ENGINE THAT ACTIVATES WHEN THE

MAIN EV BATTERY IS DEPLETED. IN THESE HILLS, THE REX ENGINE TURNED ON. FOR SEVERAL MINUTES, THE CAR DROVE NORMALLY AND KEPT PACE WITH MODERATE TRAFFIC IN THE SLOW LANE. THE SPEED LIMIT ON HIGHWAY 17 VARIES FROM 50MPH TO 65MPH. ON THE HILLY PARTS, IT IS A TWO LANE HIGHWAY WITH NO SHOULDER ON EITHER SIDE, INFREQUENT EXITS AND OCCASIONAL TURN-OUTS. WITHOUT ANY WARNING FROM THE CAR, I EXPERIENCED A SUDDEN AND DRAMATIC REDUCTION IN POWER, WITH THE CAR SLOWING FROM APPROXIMATELY 50MPH TO 25MPH EVEN UNDER FULL THROTTLE. I TURNED ON MY HAZARD BLINKERS AS APPROACHING CARS HONKED AND SWERVED TO AVOID US. WITH NO SHOULDERS, WE HAD TO "LIMP" TO THE NEXT TURNOUT. THIS WAS EXTREMELY ALARMING AND POTENTIALLY DANGEROUS. WE REALIZED THAT ENGINE WAS RUNNING LOUDLY AND WE SURMISED THAT IT WAS RECHARGING THE BATTERY. AFTER A COUPLE OF MINUTES, I CONFIRMED THAT POWER WAS RESTORED BY BRIEFLY ACCELERATING IN THE LONG TURN-OUT. I THEN ATTEMPTED TO MERGE BACK ONTO THE HIGHWAY. ALTHOUGH FULL POWER SEEMED AVAILABLE INITIALLY, AS I PULLED OUT OF THE TURN-OUT INTO THE SLOW LANE, THE POWER DROPPED AGAIN, SLOWING US FROM 40MPH BACK TO 25MPH. WE AGAIN LIMPED TO THE NEXT TURN-OUT AS CARS AVOIDED US. MOST SHOCKING OF ALL, I SPOKE WITH BMW'S INTERNAL "I CONCIERGE" PRODUCT TEAM WHO INFORMED ME THAT THIS WAS NORMAL OPERATION FOR THIS VEHICLE. I LEARNED THAT THE I3 HAS A SPECIAL MODE TO SAFELY DEAL WITH HILLS, BUT THIS WAS REMOVED FROM THE US CAR IN ORDER TO MAXIMIZE CALIFORNIA "CREDITS." MONEY TRUMPS SAFETY.

20.     BMW marketed, distributed, and sold the Class Vehicles in the State of California as well as nationwide.

21.     BMW knew or, at a minimum should have known, at the time it began to advertise and sell and/or lease the Class Vehicles that the Range Extender contained serious design, manufacturing, and/or assembly defects that caused the Class Vehicles to malfunction with the Range Extender was engaged.

22.     Plaintiff believes that due to these defects, the BMW i3 REx is defective and is not fit for its intended purpose.

23.     As a result, Class Members will suffer actual harm and damages including but not limited to:

a.     Class Members have paid premium prices for vehicles marketed with the Range Extender as doubling the driving range of the vehicle without inhibiting performance, when in fact the Subject Vehicles, when operating with the Range Extender, lose significant power and are unable to perform as they would using the charged battery; and

b.     Class Members would not have purchased the Class Vehicles had the known the vehicles lose significant power and are ill-equipped to operate safely when the Range Extender is activated.

24.     Plaintiff brings this action individually and on behalf of all other current and former owners and lessees of Class Vehicles.  Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of BMW related to the BMW i3 REx, as alleged in this Complaint.

# V.

## <u>CLASS ALLEGATIONS</u>

25.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed Class and Subclass are defined as:

> **The Nationwide Class**
> All persons who purchased or leased the following vehicles sold by Defendant in the United States other than for resale or distribution: 2014 – 2016 BMW i3 REx.  Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and the legal representatives, heirs, successors and assigns and any entity in which they have or have had a controlling interest in Defendant.

> **The California Subclass**
> All persons who purchased or leased the following vehicles sold by Defendant in California other than for resale or distribution: 2014 – 2016 BMW i3 REx. Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and the legal representatives, heirs, successors and assigns and any entity in which they have or have had a controlling interest in Defendant.

26.     Defendant's representations were applied uniformly to all Members of the Class during the Class Period, so that the questions of law and fact are common to all Members of the Class.  All Members of the Class were and are similarly affected by having been exposed to the misrepresentations, purchased or

leased and used the Subject Vehicles for their intended and foreseeable purpose, and the relief sought is for the benefit of Plaintiff and Members of the Class.

27.     The Classes are so numerous that joinder of all Members would be impractical.

28.     Questions of law and fact common to each Class Member exist that predominate over questions affecting only individual Members, including, *inter alia*:

        a.     Whether BMW engaged in the conduct alleged herein;

        b.     Whether BMW designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

        c.     Whether BMW knew, or should have known, that Class Vehicles were unable to maintain normal performance when using the Range Extender in situation requiring more power;

        d.     Whether BMW's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

        e.     Whether Plaintiff and the other Class members overpaid for their Class Vehicles;

f.      Whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to, restitution or injunctive relief; and

g.      Whether Plaintiff and the other Class member are entitled to damages and other monetary relief and, if so, in what amount.

29.    The claims asserted by Plaintiff are typical of the claims of the Class Members, as his claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff, like all Class Members, was exposed to Defendant's misrepresentations and suffered an injury.

30.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

31.    Certification of this class action is appropriate under F.R.C.P. 23(b) because the above questions of law or fact common to the respective Members of the Classes predominate over questions of law or fact affecting only individual Members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

32.    Absent a class action, it would be highly unlikely that Plaintiff or any other Class Members could protect their own interests because the cost of litigation through individual lawsuits would exceed any expected recovery.

33.     Certification is also appropriate because Defendant has acted or refused to act on grounds applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

34.     Further, given the large number of purchasers and lessees of the Subject Vehicles, allowing individual actions to proceed in lieu of a class action would risk yielding inconsistent and conflicting adjudications.

35.     A class action is a fair and appropriate method for the adjudication of this controversy, in that it will permit many claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.

36.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued regarding the management of this class action.

## COUNT I
### Violation of Magnuson-Moss Warranty Act
### (By Nationwide Class)

37.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

38.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

39.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

40.     BMW is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

41.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

42.     15 U.S.C. § 2301(d)(I) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

43.     BMW's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

44.     BMW breached these warranties as described in more detail above. Without limitation, the Class Vehicles are equipped with the Range Extender. The Class Vehicles share a common design defect in that the Range Extender, when active, fails to generate enough power to allow the Class Vehicles to operate safely, as represented by BMW.

45.     Plaintiff and the other Nationwide Class members have had sufficient direct dealings with either BMW or its agents to establish privity of contract

between BMW, on one hand, and Plaintiff and each of the other Nationwide Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between BMW and its dealers, and specifically, of BMW's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

46.     Affording BMW a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.   At the time of sale or lease of each Class Vehicle, BMW knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/ or afford BMW a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

47.     Plaintiff and the other Nationwide Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because BMW is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Nationwide Class members have not re-accepted their Class Vehicles by retaining them.

48.     The amount in controversy of Plaintiffs individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

49.     Plaintiff, individually and on behalf of the other Nationwide Class members, seeks all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

## COUNT II
### Violation of the Song-Beverly Consumer
### Warranty Act (Breach of Express Warranty)
### (By California Subclass)

50.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the California subclass.

51.     At all times herein mentioned, Defendant is the warrantor of the Class Vehicles' express warranty.

52.     Pursuant to the Class Vehicles' express warranty, Defendant undertook to preserve and maintain the utility or performance of the vehicle or provide compensation if there was a failure in such utility or performance.

53.     Plaintiff's and California subclass members' Class Vehicles have and had serious defects and nonconformities to warranty, including but not limited to inability to maintain adequate power to operate the safely vehicle while the Range

Extender is engaged, a condition which could very easily result in death or serious bodily injury.

54.    Under the Song-Beverly Consumer Warranty Act, otherwise known as the "California Lemon Law," the Class Vehicles are consumer goods leased or purchased primarily for family or household purposes and Plaintiff and California Subclass members used the Class Vehicles primarily for those purposes.

55.    Plaintiff and the California subclass are buyers of consumer goods under the California Lemon Law.

56.    The defects and nonconformity to warranty manifested within the applicable express warranty period, and were likely to cause death or serious bodily injury if the vehicle was driven.

57.    Affording BMW a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.   At the time of sale or lease of each Class Vehicle, BMW knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/or afford BMW a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

58.    Plaintiff and the California subclass members justifiably revoke acceptance of the vehicle under the California Lemon Law.

59.     Under the California Lemon Law, Plaintiff and the California subclass members  are entitled to reimbursement of all payments made towards the vehicle less the amount directly attributable to Plaintiff's use of the vehicle prior to discovery of the nonconformity under Cal. Civil Code §1793.2(d)(2)(c), in an amount to be proven at trial.

60.     Plaintiff and the California subclass members are entitled to damages resulting from BMW failure to comply with its obligations under the California Lemon Law, including a civil penalty pursuant to Cal. Civil Code §1794(e)(1) of two times the amount of their actual damages because BMW willfully failed to comply with its responsibilities under the California Lemon Law, in an amount to be proven at trial.

61.     Under the California Lemon Law, Plaintiff and the California subclass members are also entitled to recover reasonable attorney's fees and costs as part of the judgment in connection with the commencement and prosecution of this action.

## COUNT III

### Breach of Express Warranty
### (By Nationwide Class)

62.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

63.     BMW expressly warranted that the Class Vehicles, together with the Range Extender installed therein, were of high quality and, at a minimum, would work properly and as intended.

64.     BMW breached this warranty by selling to Plaintiff and the other Nationwide Class members the Class Vehicles with known defective Range Extenders. As alleged hereinabove, the defective Range Extenders fail to function properly as a result of an inherent design and/or manufacturing defect.

65.     As a result of BMW's conduct, Plaintiff and the other Nationwide Class members have suffered economic damages including, without limitation, loss of vehicle and use of the Range Extender, substantial loss in value and resale value of the vehicles, and other related damages.

66.     Plaintiff and the other Nationwide Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of BMW's conduct described hereinabove.

## COUNT IV

### Breach of Implied Warranty of Fitness For a Particular Purpose
### (By Nationwide Class)

67.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

68.   At the time of contracting, BMW had reason to know of the Plaintiff's and other Nationwide Class members' particular purpose for purchasing or leasing a Class Vehicle with a Range Extender. That particular purpose includes use of the Range Extender to double the range of the vehicle on a single charge, while maintaining the performance of the vehicle.

69.   Plaintiff and the other Nationwide Class members relied on BMW's skill and/or judgment to select or furnish suitable goods, thereby creating an implied warranty that the goods would be fit for such purpose.

70.   The Range Extender was not fit for these purposes, as alleged hereinabove. Thus, Plaintiff and the other Nationwide Class members were injured by BMW's conduct in breaching the implied warranty.

## COUNT V

### Breach of Implied Warranty of Merchantability
### (By Nationwide Class)

71.   Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

72.   BMW is and was at all relevant times a merchant with respect to the BMW i3 REx.

73.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which Range Extender equipped motor vehicles are used.  Specifically, the Class Vehicles are

equipped with a defective Range Extender, causing the vehicle to lose significant power during normal operation. The Class Vehicles share a common design defect in that the BMW i3 REx fails to operate as represented by BMW.

74.    Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between BMW and its dealers and, specifically, of BMW's implied warranties.

75.    As a direct and proximate result of BMW's breach of the warranty of merchantability, Plaintiff and the other Nationwide Class members have been damaged in an amount to be proven at trial.

## COUNT VI
### Breach of Implied Warranty of Merchantability
### (By California Subclass)

76.    Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference. Plaintiff brings this cause of action on behalf of himself and the California Subclass.

77.    Defendant designed, engineered, manufactured, tested, assembled, marked, advertised, sold and/or distributed the Class Vehicles leased and/or purchased by Plaintiff and members of the California Subclass.

78.    Pursuant to the Uniform Commercial Code, Defendant implied a warranty of merchantability concerning the Class Vehicle that it was fit for the ordinary purpose for which such goods are used.

79.    The product sold by Defendant and supplied to Plaintiff and members of the California Subclass was not of merchantable quality in that: (a) The product was unreasonably dangerous; and (b) The unreasonably dangerous condition existed when the goods left Defendant's hands.

80.    As a result of the failure of the Class Vehicle to have the expected quality, the vehicle exhibits a sudden, expected, and severe loss of power when the Range Extender is activated, a condition which could very easily result in death or serious bodily injury.

81.    The failure of the Class Vehicles to have the expected quality was a substantial factor in causing harm to Plaintiff and members of the California Subclass.

82.    Plaintiff and the California Subclass is therefore entitled to damages in an amount to be proven at trial.

83.    Plaintiff and the California Subclass is further entitled to rescission of their contracts and a return of any amounts paid toward the purchase of their Class Vehicles.

84.    Plaintiff and the California Subclass is further entitled to recover a civil penalty pursuant to Cal. Civil Code §1794(e)(1) of two times the amount of their actual damages.  Plaintiff and the Subclass Members are also entitled to attorneys' fees and costs pursuant to California Civil Code § 1794(d), and all other remedies permitted by law.

## COUNT VII

**Unlawful, Unfair, and Fraudulent Business Acts and Practices —**
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(By California Subclass)**

85.    Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the California Subclass.

86.    This cause of action is brought under the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*, which provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

87.    BMW engaged in unfair, deceptive, untrue or misleading advertising because they marketed the Class Vehicles as having an Range Extender that allowed the vehicle to double the battery range, without representing that while using the Range Extender the Class Vehicles lost significant power.

88.    As a result of BMW's misrepresentations alleged herein, Plaintiff and the other California Class members overpaid for their Class Vehicles because the value of the Range Extender was illusory.

89.    BMW's misrepresentations and omissions alleged herein caused Plaintiff and the other California Class members to make their purchases or leases

of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other California Class members would not have purchased or leased these Vehicles, would not have purchased or leased these Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that could travel a longer range while maintaining power and performance.

90. As one of the purchasers of the Class Vehicles who, as alleged above, was exposed to the misrepresentations and would not have paid the prices he did, if at all, if the true facts had been disclosed to him, Plaintiff has standing and is entitled to seek all available remedies under the UCL.

91. As a private attorney general seeking to confer an important benefit to upon the public at large, Crown seeks to recover its reasonable attorneys' fees pursuant to California Civil Procedure Code § 1021.5.

92. Under California Business & Professions Code § 17203, as a result of VW's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief, restitution for out-of-pocket expenses, and an order disgorging from Defendant and restoring to Members of the Class all monies that may have been acquired by Defendant because of such unfair, deceptive and/or unlawful business acts or practices.

93. Under California Civil Code § 3287(a), Plaintiff and Class Members are further entitled to pre-judgment interest as a direct and proximate result of BMW's wrongful conduct. The amount on which interest is applied is a sum certain and capable of calculation in an amount according to proof.

## __COUNT VIII__

**Violation of the Consumers Legal Remedies Act,**

**Cal. Bus. & Prof. Code § 17500,** *et seq***.**

**(By California Subclass)**

94.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.   Plaintiff brings this cause of action on behalf of himself and the California Subclass.

95.     This Cause of Action is brought pursuant to the California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et. seq.

96.     The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

97.     Plaintiff and the Class Members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, Class Members, and BMW are "persons" as defined in Cal. Civ. Code § 1761(c).

98.     BMW made numerous representations concerning the vehicles specifications that were misleading, including marketing and advertising the Class Vehicles as having the ability to double in range, when such an increase was at the expense of the Class Vehicles' performance.

99.     In purchasing or leasing the Affected Vehicles, Plaintiff and Class Member were deceived by BMW's failure to disclose that the Class Vehicles, while operating on the Range Extender, were unable to sustain normal performance.

100. BMW's conduct, as hereinabove described, is in violation of California Civil Code §1770(a)(5), representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

101. BMW's conduct, as hereinabove described, is in violation of California Civil Code §1770(a)(7), representing that goods are of a particular standard, quality, or grade, if they are another.

102. BMW's conduct, as hereinabove described, is in violation of California Civil Code §1770(a)(9), advertising goods with the intent not to sell them as advertised.

103. BMW's conduct, as hereinabove described, is in violation of California Civil Code §1770(a)(16), representing that goods have been supplied in accordance with a previous representation when they have not.

104. As a direct and proximate result of Defendant's unlawful, unfair, and deceptive business practices in violation of California Civil Code Cal. Civ. Code § 1750 *et seq.*, Plaintiff and the Class Members have suffered and continue to suffer harm by Defendant's conduct.  Defendant's conduct presents a continuing threat of harm to the public in that, among other things, Defendant will continue to mislead consumers by selling vehicles that are not of the particular characteristics, standard, quality, and/or grade represented by Defendant to consumers. Furthermore, Defendant's conduct presents a continuing threat of harm to the public in that Defendant will continue to make false representations to consumers that Defendant has sold the vehicle in accordance to Defendant's prior

representations to such consumers, when in fact Defendant has not actually done so.

105. Accordingly, Plaintiff and Class Members seek an injunction requiring defendant to immediately cease all acts of unfair and fraudulent business practices as alleged herein. Additionally, Plaintiff and Class Members seek attorneys' fees and costs pursuant to California Civil Code § 1780(e), and all other remedies permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, for himself and all others similarly situated, prays for relief against Defendant, jointly and severally under each Count in this Complaint as follows:

1. For an order certifying the Nationwide Class and California Subclass, and appointing Plaintiff's counsel as Counsel for both Classes;

2. For an award of equitable relief as follows:

    a. An order enjoining BMW from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business acts or practices and from refusing to engage in a corrective advertising campaign; and

    b. An order awarding restitution for out-of-pocket expenses and economic harm and disgorging and restoring all monies that may have been acquired by BMW because of such acts and/or practices;

3.      For an award of damages as permitted by law;

4.      For an award of punitive damages for BMW's malicious, oppressive and deliberate fraud, as permitted by law;

5.      For an order rescinding their contracts and a ordering the return of any amounts paid toward the purchase of their Class Vehicles

6.      For an award of attorneys' fees under, *inter alia*, Cal. Code Civ. Proc. § 1021.5 and Cal. Civ. Code §§ 1750, *et seq.* and 1794, *et. seq.*;

7.      For pre- and post-judgment interest on any amounts awarded;

8.      For an award of costs; and

9.      For an Order providing such further relief as may be found just and proper.

**MLG AUTOMOTIVE LAW, APLC**

Dated:  May 17, 2016          By:      ___/s/ Jonathan A. Michaels___
                                        Jonathan A. Michaels, Esq.
                                        Kathryn J. Harvey, Esq.
                                        Kristen R. Rodriguez, Esq.
                                        Attorneys for Plaintiff,
                                        Edo Tsoar

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**MLG Automotive Law, APLC**

Dated:  May 17, 2016          By:      */s/ Jonathan A. Michaels*
                                         Jonathan A. Michaels, Esq.
                                         Kathryn J. Harvey, Esq.
                                         Kristen R. Rodriguez, Esq.
                                         Attorneys for Plaintiff,
                                         Edo Tsoar